Fox *v.* McGregor.

* * *

Fox *vs.* McGregor and Main.

Neither the keeper of a livery stable, nor an agister of cattle, has a lien on a horse delivered to him for keeping, without a special agreement to that effect.

An innkeeper has no lien upon a horse put into his stable, unless ~~belonging~~ *delivered* ~~to~~ to a *guest*.

An innkeeper can not, at common law, sell his guest's horse for his keeping.

The remedy to enforce the lien is by action in the nature of a bill in chancery.

THIS was an action of trover for a horse. The conversion was stated to have been on the 14th of August, 1849, and the action was commenced before a justice of the peace, the week following. The plaintiff gave evidence tending to show that he was the owner of the horse, and that it was sold by an auctioneer, by order of the defendants on the 14th of August, 1849, and bid off by a stranger. On the part of the defendants, it was proved that they were innkeepers in the city of Troy, and that in their notice of sale, they claimed to sell the horse " by virtue of an innkeeper's license." It was proved by the defendants' hostler, that he found the horse tied, in the defendants' stable, about seven or eight weeks before the sale, and that he was regularly fed with hay and oats, up to the day of sale. The

hostler did not know by whom the horse was put there, nor was there any evidence tending to show by whom he was put in the stable, or how he came there. It did not appear where the plaintiff, lived, or that he was ever in the city of Troy, either as a traveler or otherwise. The justice gave judgment for the plaintiff for the value of the horse, which the county court of Rensselaer county reversed. From which latter judgment the plaintiff appealed to this court.

*E. F. Bullard,* for the appellant.

*Pierson & Smith,* for the defendants.

*By the Court,* WILLARD, P. J. The justice must have found as a fact that the property of the horse was in the plaintiff, and that the defendants sold him under the pretense of a lien as innkeepers. The evidence clearly justified that finding. The sale was a conversion, and superseded the necessity of any demand, before the commencement of the action. The important question is whether the defendants showed any right thus to dispose of the horse. If the horse came into the defendants' inclosure as a *stray,* they had no right to sell him without pursuing the course pointed out by the revised statutes, relative to "strays." (1 *R. S.* 351.) It is not pretended that they obeyed the requisitions of this statute. Indeed they did not treat the animal as a stray, but claimed to sell it in satisfaction of their lien as innkeepers.

If the proof would have warranted the finding that the defendants were the keepers of a livery stable, *as there was no evidence of an agreement for a lien,* none attached upon the property. ( *Wallace* v. *Woodgate,* 1 *C. & P.* 575. *Bevan* v. *Waters,* 3 *Id.* 520. *Yorke* v. *Grenaugh,* 2 *Ld. Ray.* 866.) Neither the agisters of cattle nor the keepers of a livery stable have any lien, without a special agreement to that effect. (*S. C. and Richards* v. *Symonds,* 15 *Law J., N. S.* 35. 10 *Jur.* 6. 2 *Kent's Com.* 635. *Grinnell* v. *Cook,* 3 *Hill,* 485; where the cases on the subject are collected.)

The defendants acquired no lien by virtue of their employment as innkeepers, unless the horse was delivered to them by a *guest*. (*Grinnell* v. *Cook*, 3 *Hill*, 485. *Binns* v. *Piggot*, 9 *C. & P.* 208, *Parke, J.*) If the guest was not the rightful owner of the horse, the lien would attach provided the innkeeper had no notice of the wrong, and acted honestly. (*Johnson* v. *Hill*, 3 *Starkie*, 172, *per Abbott.*) There is not the slightest evidence that this horse was ever delivered to the defendants, either by the plaintiff or any one else, as a guest. There was nothing, therefore, from which the justice could find that the defendants had a lien upon the horse.

But if the presumption may be drawn from the nature of the defendants' employment, that the horse belonged to one of their guests, still they had no right to sell it in satisfaction of their lien. Although there is a dictum to the contrary by Popham, Ch. J. in *Hostler's case*, (*Yelv. Rep.* 66,) it is settled that except within the city of London, an innkeeper can not, at common law, sell his guest's horse for his keeping. (*Jones* v. *Pearle*, 1 *Str.* 556. *Pothonier* v. *Dawson*, 1 *Holt, N. P.* 383. 2 *Kent's Com.* 642.) The remedy to enforce the lien is by action in the nature of a bill in chancery. (1 *Cowen's Tr. 2d ed.* 299.)

Under no aspect of the testimony were the defendants authorized to sell the horse in question. The judgment of the county court must be reversed and that of the justice affirmed.

[MONTGOMERY GENERAL TERM, May 5, 1851.—*Willard*, *Hand* and *Cady*, Justices.]